IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RUSSELL B. CAIN**, | ) |
| Plaintiff, | ) |
| | ) 2:11cv1626 |
| v. | ) **Electronic Filing** |
| | ) |
| **MICHAEL J. ASTRUE**, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

### I.   INTRODUCTION

Russell B. Cain ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Defendant" or "Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 – 433, 1381 – 1383f ("Act").  This matter comes before the court on cross motions for summary judgment.  (ECF Nos. 11, 15).  The record has been developed at the administrative level.  For the following reasons, Plaintiff's Motion for Summary Judgment will be granted in part and denied in part and Defendant's Motion for Summary Judgment will be denied.

### II.   PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI on January 31, 2008, claiming that he was disabled from all work as of August 16, 2007 due to initial allegations of depression, anxiety, vertigo, and

joint pain. (R. at 165 – 74, 184).[1]  Plaintiff was initially denied benefits on June 26, 2008. (R. at 63 – 84). A hearing was scheduled for July 6, 2010, and Plaintiff appeared to testify represented by counsel. (R. at 25 – 34). A vocational expert also testified. (R. at 25 – 34). The Administrative Law Judge ("ALJ") issued his decision denying benefits to Plaintiff on July 20, 2010. (R. at 11 – 24). Plaintiff filed a request for review of the ALJ's decision by the Appeals Council, which request was denied on October 24, 2011, thereby making the decision of the ALJ the final decision of the Commissioner. (R. at 1 – 5).

Plaintiff filed his Complaint in this court on January 12, 2012. (ECF No. 4). Defendant filed his Answer on April 16, 2012. (ECF No. 6). Cross motions for summary judgment followed. (ECF Nos. 11, 15).

### III.  STATEMENT OF THE CASE

#### A. General Background

Plaintiff was born on March 23, 1961, and was forty nine years of age at the time of his administrative hearing. (R. at 32, 165 – 74). Plaintiff lived at home with his mother and father, and had two children. (R. at 219). He obtained a GED in 1982, but had no post-secondary or vocational education. (R. at 188). Plaintiff stopped working on October 2, 2003, following an accident on an all-terrain vehicle ("ATV"). (R. at 184). His most recent work included employment was as a laborer for a construction company between 1986 and 1993, and as a mechanic at an auto parts shop between 1996 and 2003. (R. at 185, 190).

At the time of his application for benefits, Plaintiff's daily routine included waking up, making coffee, watching television, taking a walk, eating dinner, feeding his dogs, watching more television, washing up, and going to bed. (R. at 196 – 97). Plaintiff claimed that his sleep

---

[1]   Citations to ECF Nos. 7 – 7-10, the Record, *hereinafter*, "R. at __."

was frequently interrupted. (R. at 198). Dizziness allegedly limited Plaintiff when attempting certain activities, but he was otherwise capable of caring for his personal needs. (R. at 198, 201). Following his ATV accident, Plaintiff stopped cooking because he was injuring himself and burning his food. (R. at 199). Plaintiff did do some cleaning, and mowed his lawn when he was not feeling dizzy. (R. at 199). Plaintiff could go shopping two or three times per month for approximately half an hour. (R. at 200). He claimed that he could not pay his bills or handle a checking or savings account, however. (R. at 200).

Plaintiff did still manage to visit, talk, watch television, and go for walks with other people about once per week. (R. at 201). He also attended church regularly, and went to therapy every other week. (R. at 201). Plaintiff could walk one half mile before stopping to rest for ten minutes. (R. at 202). He could only maintain attention for five or ten minutes. (R. at 202). Written and spoken instructions confused him. (R. at 202). He got along "pretty good" with other people. (R. at 203). Plaintiff was easily stressed and was afraid of falling. (R. at 203). He claimed to use a cane to walk. (R. at 203). Plaintiff experienced physical pain in his head, neck, and back when bending, sitting, and standing. (R. at 204).

### B. Medical History

Plaintiff received some psychiatric treatment through Southwestern Pennsylvania Human Services Behavioral Care ("SPHS"). (R. at 219, 268). On May 19, 2006, Plaintiff originally contacted SPHS seeking outpatient care. (R. at 219, 268). At the time, he was experiencing racing thoughts, was depressed, and was irritable. (R. at 219 – 20, 268 – 69). He denied suicidal ideation. (R. at 220, 269). Plaintiff was diagnosed with depression, and was given a GAF score of 58. (R. at 221). No other notes from SPHS were provided in the record.

Douglas V. Skinner, M.D. was Plaintiff's treating physician between 2006 and 2010. (R. at 225 – 32, 234, 277 – 80, 305 – 10). His medical record included notations of depression, and medications prescribed for treatment thereof. (R. at 229 – 32, 234, 277 – 80). Dr. Skinner's records also included finding no vestibular abnormality, despite complaints of dizziness. (R. at 232). In later examinations at his practice, Dr. Skinner noted Plaintiff's depression and anxiety had worsened. (R. at 277). Plaintiff also complained of joint pain in the shoulders, knees, elbows, ankle, and neck. (R. at 277).

Dr. Skinner completed an assessment of Plaintiff's mental status on February 29, 2008. (R. at 225 – 27). Dr. Skinner indicated that Plaintiff suffered from an emotional disorder, and had a history of treatment. (R. at 225 – 27). He stated that Plaintiff was prescribed Prozac and Xanax by a psychiatrist. (R. at 225 – 27). Dr. Skinner opined that Plaintiff was alert and oriented, exhibited no abnormal emotional symptoms, and had no issues with keeping appointments, interacting appropriately with office staff, or maintaining an appropriate appearance. (R. at 225 – 27). He did, however, have issues interacting appropriately with family, friends, neighbors, co-workers, employers, and the general public – Dr. Skinner specifically noting that Plaintiff had been reported to the police by others for his behavior. (R. at 225 – 27). Dr. Skinner could not say whether Plaintiff had functional deficits in terms of his activities of daily living. (R. at 225 – 27). He also could not say whether Plaintiff had difficulty with concentration, persistence, or pace. (R. at 225 – 27). Plaintiff's prognosis was believed to be "fair." (R. at 225 – 27).

A Physical Residual Functional Capacity Assessment ("RFC") of Plaintiff was completed by state agency evaluator Abu N. Ali, M.D. on April 14, 2008. (R. at 235 – 42). Following a review of Plaintiff's medical record, Dr. Ali concluded that the evidence established impairment

4

in the way of post head trauma dizziness, and a history of asthma. (R. at 235 – 42). As a result of these impairments, Plaintiff was considered to be limited to occasionally lifting ten pounds, frequently lifting significantly less than ten pounds, standing and walking two hours of an eight hour work day, sitting approximately six hours, and occasionally climbing, balancing, stooping, kneeling, crouching, and crawling. (R. at 235 – 42). He would need to avoid concentrated exposure to extreme heat and cold, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation, and all exposure to machinery and heights. (R. at 235 – 42).

As support for these specific findings, Dr. Ali cited a lack of vestibular pathology, normal MRI of Plaintiff's brain, an observed antalgic gait, full grip strength, and loss of balance while walking and bending, and a normal range of motion in the joints and spine. (R. at 235 – 42). Treatment of Plaintiff's physical conditions with medication and therapy had generally been successful, Plaintiff did not require an assistive device to ambulate, and Plaintiff was capable of walking a half mile. (R. at 235 – 42).

On June 13, 2008, Lanny Detore, Ed.D. completed a Clinical Psychological Disability Evaluation of Plaintiff on behalf of the Bureau of Disability Determination. (R. at 243 – 50). Plaintiff was driven to the evaluation, stating that he did not like to drive because of his anxiety. (R. at 243 – 50). He was also worried that his vertigo could cause him to have an accident. (R. at 243 – 50). Plaintiff attributed all of his impairments to his ATV accident. (R. at 243 – 50).

Dr. Detore noted Plaintiff's history of treatment at SPHS, and an in-patient psychiatric hospitalization in January 2005. (R. at 243 – 50). Plaintiff described being nearly immobilized by depression for approximately two years following his accident. (R. at 243 – 50). After his inpatient treatment, Plaintiff continued with therapy and saw improvement. (R. at 243 – 50). Plaintiff was prescribed Prozac and Xanax. (R. at 243 – 50). Plaintiff stated that he only took

the Xanax when he felt that he would be in a situation which would cause him anxiety. (R. at 243 – 50).

Plaintiff was able to help his parents around their house, did simple yard work, and engaged in basic activities of daily living, but lacked motivation to do much more. (R. at 243 – 50). He struggled with depression. (R. at 243 – 50). He reported experiencing anxiety around others, and often had panic episodes with heart palpitations and shortness of breath. (R. at 243 – 50). Plaintiff had a fear that others were always watching him. (R. at 243 – 50). Plaintiff mostly kept to himself in a trailer on his parents' property. (R. at 243 – 50). He visited with friends on the weekends, and would accompany his parents to eat at a restaurant. (R. at 243 – 50).

Upon examination, Dr. Detore observed that Plaintiff was a pleasant, soft-spoken individual with slightly elevated anxiety. (R. at 243 – 50). His personal hygiene was fair, but he had a noticeable body odor. (R. at 243 – 50). Plaintiff endorsed continuing difficulty with sleep. (R. at 243 – 50). Plaintiff's thoughts were well organized and goal-directed, and his speech was relevant and coherent. (R. at 243 – 50). Depression was moderately apparent. (R. at 243 – 50). He lacked desire to engage in activity, but was able to complete tasks once started. (R. at 243 – 50).

Plaintiff's affect was found to be subdued, his mood was not severely depressed, he was oriented, his memory was intact, he had no difficulty with basic arithmetic, and he had no issues with impulsivity. (R. at 243 – 50). Plaintiff was diagnosed with moderate, ongoing depressive disorder with dysthymic features, and generalized anxiety disorder. (R. at 243 – 50). Plaintiff's prognosis was "good." (R. at 243 – 50). Dr. Detore opined that Plaintiff's anxiety would limit his functioning in a workplace and social settings. (R. at 243 – 50). He would be slightly to moderately limited in understanding, remembering, and carrying out short, simple instructions.

(R. at 243 – 50).  He would be moderately limited when interacting with supervisors and co-workers, when making judgments on simple work-related decisions, when understanding, remembering, and carrying out detailed instructions, when responding to work pressures in a usual setting, and when responding to changes in a routine work setting.  (R. at 243 – 50). Plaintiff would have moderate to marked limitation when interacting with the general public.  (R. at 243 – 50).  Plaintiff could manage his own benefits.  (R. at 243 – 50).  He functioned "fairly well" in managing activities of daily living in the confines of a comfortable environment.  (R. at 243 – 50).

On June 25, 2008, a Mental RFC of Plaintiff was completed by state agency evaluator Ray M. Milke, Ph.D.  (R. at 251 – 54).  Following a review of Plaintiff's record, Dr. Milke concluded that his impairments included affective disorders and anxiety-related disorders.  (R. at 251 – 54).  He specifically indicated that these impairments would result in marked limitation with respect to interacting appropriately with the general public.  (R. at 251 – 54).  The limitations would also create moderate limitation with respect to understanding, remembering, and carrying out detailed instructions, maintaining concentration and attention for extended periods, completing a normal work day and work week without interruption for psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, accepting instructions and responding appropriately to criticism from supervisors, getting along with co-workers without being a distraction or exhibiting behavioral extremes, maintaining socially appropriate behavior and levels of neatness and cleanliness, responding appropriately to change in a work setting, and making realistic goals and plans independently of others.  (R. at 251 – 54).

Dr. Milke opined that Plaintiff was incapable of understanding and remembering complex or detailed instructions. (R. at 251 – 54). Plaintiff would have difficulty working with or near others, and stress would worsen his impairments. (R. at 251 – 54). Plaintiff had a low tolerance for frustration. (R. at 251 – 54). His limitation in all functional areas considered was "significant." (R. at 251 – 54). In spite of his limitations, however, Dr. Milke believed Plaintiff was capable of engaging in full-time work. (R. at 251 – 54). He could work at a consistent pace and make simple decisions. (R. at 251 – 54). He could sustain a routine and adapt to changes. (R. at 251 – 54).

On March 20, 2010, Plaintiff was seen at the emergency department of Monongahela Valley Hospital for complaints of severe anxiety. (R. at 281 – 82, 287 – 95). He complained of chills, palpitations, headache, dizziness, and tremors. (R. at 281 – 82). Upon examination he was found to be in no distress, but hand tremors and tongue fasciculation were observed. (R. at 281 – 82). His anxiety level was considered to be mild. (R. at 289). He was well-groomed, his behavior was appropriate, his speech was clear, and his thought processes were intact. (R. at 289). He was diagnosed with anxiety and alcohol withdrawal, and was prescribed Librium for treatment. (R. at 282 – 82, 285). Plaintiff was released to go home, and advised to follow up with Dr. Skinner upon discharge. (R. at 285). He was not believed to be at risk for falling. (R. at 291).

Plaintiff was examined by Dr. Skinner at a follow-up appointment in June 2010. (R. at 305 – 10). It was noted that the day Plaintiff suffered a "panic attack" and was seen at the hospital, he was scheduled for a hearing before the Social Security Administration. (R. at 305 – 10). Dr. Skinner opined that – at that time – Plaintiff had stopped taking his medication for depression and anxiety, as prescribed, despite "doing ok." (R. at 305 – 10). Dr. Skinner had

started Plaintiff on Zoloft upon his release from the hospital, and also prescribed Xanax, as needed.  (R. at 305 – 10).  Plaintiff had since reported sleeping better and eating better.  (R. at 305 – 10).  His mood was better, he felt less anxious, and he had quit drinking altogether.  (R. at 305 – 10).  Plaintiff did have noticeable tremors in his hands.  (R. at 305 – 10).  Dr. Skinner diagnosed improved anxiety with panic attacks, improved depression, history of head injury with some residual personality changes and cognitive changes, history of substance abuse, history of alcoholism, and intentional tremors related to alcohol use and exacerbated by withdrawal.  (R. at 305 – 10).

### C. Administrative Hearing

At his hearing, Plaintiff testified that he had been seeing Dr. Skinner for treatment of his physical and mental ailments, including tremors, vertigo, back and neck pain, depression, anxiety, and sleeplessness.  (R. at 27).  Plaintiff stated that he had begun experiencing these problems after sustaining injuries to his head, neck, and back in an ATV accident.  (R. at 28).  Dr. Skinner provided prescription medication for treatment of Plaintiff's ailments.  (R. at 28).  He took over-the-counter medication for relief of headaches.  (R. at 28).

Plaintiff informed the ALJ that his ability to walk was his greatest limitation.  (R. at 28).  Extended distances required frequent rest and caused pain.  (R. at 28).  Plaintiff also explained that his hand tremors often caused him to drop items and made writing even his name difficult.  (R. at 27, 29).  He frequently experienced blurred vision and inability to concentrate.  (R. at 28).  Bouts of dizziness would cause him to fall.  (R. at 29).

Plaintiff testified to experiencing panic attacks "a couple times a day."  (R. at 30).  The attacks could last up to four hours, and had been so extreme that he sought help at the hospital.  (R. at 30).  Plaintiff experienced these episodes despite implementation of relaxation techniques

and use of prescribed medication. (R. at 30). When around groups of people, Plaintiff claimed that he would become "jittery." (R. at 31). Plaintiff lived with his mother and father, and relied upon his mother to prepare his meals. (R. at 30). He spent his days watching television, and did not help with household chores. (R. at 31).

Following Plaintiff's testimony, the ALJ asked the vocational expert whether jobs existed in significant numbers in the national economy for an individual of Plaintiff's age, educational background, and work experience, if limited to medium exertional work in a low stress environment, with no exposure to the public. (R. at 33). In response, the vocational expert stated that such a person would be qualified for "medium laundry worker jobs," with 400,000 positions available in the national economy, for "medium packing jobs," with 500,000 positions available, and for "medium cleaning jobs," with 160,000 positions available. (R. at 33).

### IV. STANDARD OF REVIEW

To be eligible for social security benefits under the Act, a claimant must demonstrate to the Commissioner that he or she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler*, 786 F. 2d 581, 583 (3d Cir. 1986).

When reviewing a claim, the Commissioner must utilize a five-step sequential analysis to evaluate whether a claimant has met the requirements for disability. 20 C.F.R. §§ 404.1520, 416.920. The Commissioner must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., Pt.

404, Subpt. P, App'x 1; (4) whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Barnhart v. Thomas*, 540 U.S. 20, 24 – 25 (2003). If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given claimant's mental or physical limitations, age, education, and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Doak v. Heckler*, 790 F. 2d 26, 28 (3d Cir. 1986).

Judicial review of the Commissioner's final decisions on disability claims is provided by statute, and is plenary as to all legal issues. 42 U.S.C. §§ 405(g)2, 1383(c)(3)3; *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 431 (3d Cir. 1999). Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based; the court will review the record as a whole. See 5 U.S.C. §706. The district court must then

---

2 Section 405(g) provides in pertinent part:
> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business

42 U.S.C. § 405(g).

3 Section 1383(c)(3) provides in pertinent part:
> The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

42 U.S.C. § 1383(c)(3).

determine whether substantial evidence existed in the record to support the Commissioner's findings of fact. *Burns v. Barnhart*, 312 F. 3d 113, 118 (3d Cir. 2002).

Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. *Ventura v. Shalala*, 55 F. 3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If the Commissioner's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson*, 402 U.S. at 390. When considering a case, a district court cannot conduct a de novo review of the Commissioner's decision nor re-weigh the evidence of record; the court can only judge the propriety of the decision in reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196 – 97 (1947). The court will not affirm a determination by substituting what it considers to be a proper basis. *Chenery*, 332 U.S. at 196 – 97. Further, "even where this court acting de novo might have reached a different conclusion . . . so long as the agency's factfinding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings." *Monsour Medical Center v. Heckler*, 806 F. 2d 1185, 1190 – 91 (3d. Cir. 1986).

V.  **DISCUSSION**

In his decision, the ALJ determined that Plaintiff suffered severe, medically determinable impairments in the way of intracranial injury/residual of a head injury, depressive disorder, and anxiety disorder. (R. at 13). As a result of these impairments, Plaintiff was limited to medium exertional work in a low stress work environment, and could not work with the general public or in occupations of a competitive nature. (R. at 15). In spite of such limitations, and based upon

the testimony of the vocational expert, the ALJ ultimately determined that Plaintiff was eligible for a significant number of jobs in the national economy, and was not entitled to DIB or SSI. (R. at 19 – 20).

Plaintiff objects to the determination, arguing that remand is required due to several errors made by the ALJ in his decision rationale. (ECF No. 12). According to Plaintiff, the ALJ failed to consider properly the findings of Drs. Ali and Detore, failed to provide all limitations from his RFC to the vocational expert in his hypothetical question, and failed to account for findings of moderate limitation in concentration, persistence, and pace in either the RFC or hypothetical question. (ECF No. 12 at 8 – 21). Defendant counters that the ALJ's assessments were all adequately supported by substantial evidence. (ECF No. 16 at 12 – 23).

Plaintiff's first argument focuses upon the ALJ's treatment of various medical opinions found in the record. The ALJ listed the findings made by Dr. Detore during his examination, but did not indicate which findings he gave weight, which he did not give weight, and his reasoning for his choices. (R. at 16 – 17). Also, without discussing the pertinent portions of Dr. Ali's medical conclusions, the ALJ summarily rejected Dr. Ali's findings as "not supported by the evidence of record." (R. at 17).

The United States Court of Appeals for the Third Circuit has held that "[a] written evaluation of every piece of evidence is not required, so long as the ALJ articulates at some minimum level her analysis of a particular line of evidence." *Phillips v. Barnhart*, 91 Fed. App'x 775, 780 n. 7 (3d Cir. 2004) (citing *Green v. Shalala*, 51 F. 3d 96, 101 (7th Cir. 1995)). This is particularly true when evidence is not indicative of limitation. *Johnson v. Comm'r of Soc. Sec.*, 529 F. 3d 198, 204 (3d Cir. 2008). *See also Hur v. Barnhart*, 94 Fed. App'x 130, 133 (3d Cir. 2004). However, it has also long been the policy in this circuit that "an ALJ's finding of

residual functional capacity must 'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" *Fargnoli v. Massanari*, 247 F. 3d 34, 41 (3d Cir. 2001) (quoting *Cotter v. Harris*, 642 F. 2d 700, 704 (3d Cir. 1981)). "[T]he examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based." *Id.* (quoting *Baerga v. Richardson*, 500 F. 2d 309, 312 (3d Cir. 1974)). The ALJ did not meet these requirements.

It is one thing to recite medical findings, it is another matter entirely to *discuss* findings. While the ALJ reported the findings of Dr. Detore, he neither discussed the import of the findings, nor did he explain why the findings were not adopted. In a similar – but more severe – vein, the ALJ rejected the findings of Dr. Ali. The ALJ did not, however, attempt to recount the more remarkable findings, nor did he attempt more than a cursory explanation for rejecting those findings. Given the rather concise nature of Plaintiff's medical record, ignoring such thorough findings was improper. Further, simply stating that Dr. Ali's conclusions were "not supported by the evidence of record," was inadequate to explain the findings away. An ALJ's failure to explain the rejection of evidence contrary to his disability determination is clear error. *Fargnoli*, 247 F. 3d at 42, 44. Both doctors' evaluations included limitations not addressed by the ALJ, and should have received greater attention.

Additionally, the court takes note that the ALJ also failed to discuss the findings of Dr. Milke in his decision with greater than two brief sentences. (R. at 18 – 19). Nonetheless, Defendant attempts to rely on Dr. Milke's notes to support his contention that the ALJ made the correct decision. However, consideration of this evidence by the court would not be appropriate, because the ALJ made no mention of it in his decision. *Id.* at 44 n. 7. As such, the failure to

give thorough consideration in his decision to Drs. Ali, Detore, and Milke – three medical opinions in an otherwise sparse medical record – renders the ALJ's rationale severely lacking. *Id.* at 42. This court cannot overlook these failings by the ALJ. To do otherwise "approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" *Stewart v. Sec'y of Health, Educ. and Welfare*, 714 F. 2d 287, 290 (3d Cir. 1983) (quoting *Arnold v. Sec'y of Health, Educ. and Welfare*, 567 F. 2d 258, 259 (4th Cir. 1977)).

Plaintiff next alleges that the ALJ committed error by failing to include the limitation that Plaintiff could not engage in work of a competitive nature in his hypothetical to the vocational expert, while including said limitation in his RFC. With respect to such a discrepancy, a claimant is justified in challenging the validity of an ALJ's reliance upon the testimony of a vocational expert when the ALJ "failed to convey limitations to the vocational expert that were properly identified in the RFC assessment." *Rutherford v. Barnhart*, 399 F. 3d 546, 554 n. 8 (3d Cir. 2005). The ALJ cannot reasonably rely upon the vocational expert's testimony regarding a less constrained set of functional limitations to support his conclusion that Plaintiff can find a significant number of jobs in the national economy with a more constrained set of limitations. While Defendant would ask this court to assume that the inaudible portion of the ALJ's question to the vocational expert in the hearing transcript included the missing limitation found in the RFC, the court will not do so. There is no evidence adduced by Defendant to support such a contention. This is error requiring remand.

Finally, Plaintiff asserts that the ALJ's hypothetical and RFC should have included accommodations for moderate limitation in concentration, persistence, and pace, because the ALJ found said limitation at Step 3 of the five step analysis. Defendant counters that such a

limitation finding was not part of the ALJ's RFC assessment, and should have no bearing upon his analysis at Steps 4 and 5. The court disagrees.

This issue has been addressed by the United States Court of Appeals for the Third Circuit, and this court finds the present case sufficiently analogous. The circuit court has held that "[w]hile S.S.R. 96-8p does state that the PRTF findings are 'not an RFC assessment' and that step four requires a 'more detailed assessment,' it does not follow that the findings on the PRTF play no role in steps four and five, and S.S.R. 96-8p contains no such prohibition." *Ramirez v. Barnhart*, 372 F. 3d 546, 555 (3d Cir. 2004). While the ALJ's finding of moderate limitation with concentration, persistence and pace did not appear on a separate PRTF, it did appear in the decision for the same purpose of assessing Plaintiff's qualification for a listed impairment at Step 3. The ALJ does not discuss why this finding was not accommodated in his RFC, and neither does he discuss record evidence tending to support limitation in concentration, persistence, and pace. As a result, the court cannot conclude that the ALJ's RFC and hypothetical were adequate reflections of Plaintiff's true level of functioning.

## VI. CONCLUSION

Based upon the forgoing, substantial evidence was not provided by the ALJ to support his ultimate disability determination. Accordingly, Plaintiff's Motion for Summary Judgment will be granted to the extent remand is sought, and denied to the extent reversal and an immediate award of benefits is sought; Defendant's Motion for Summary Judgment will be denied; and, the decision of the ALJ will be vacated and the case remanded for reconsideration consistent with this opinion. On remand the Commissioner must fully develop the record, afford Plaintiff "an opportunity to be heard" during the course of the upcoming administrative proceedings, and explain

adequately his or her findings on all areas to be addressed. *Thomas v. Commissioner of Social Security Administration*, 625 F.3d 798, 800-801 (3d Cir. 2010). Appropriate orders follow.

Date: March 15, 2013

                                        s/ David Stewart Cercone
                                        David Stewart Cercone
                                        United States District Judge

cc.    Erik W. Berger, Esq.
       Law Office of Erik W. Berger
       3744 Dupont Station Court S
       Jacksonville, FL 32217
       (904) 733-2800

       Albert Schollaert
       United States Attorney's Office
       700 Grant Street
       Suite 4000
       Pittsburgh, PA 15219
       (412) 644-3500